**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

**CASE NO. 4:25-CV-10046-GAYLES/SHAW-WILDER**

JOHN THIELEN,

      **Plaintiff,**

vs.

BENTLEY MOTOR, INC.,

      **Defendant.**

_____/

**OMNIBUS REPORT AND RECOMMENDATION ON MOTION TO DISMISS**
**AND MOTION TO CONFIRM ARBITRATOR'S AWARD**

**THIS CAUSE** is before the Court on the Motion to Dismiss and Memorandum of Law in Support ("Motion to Dismiss") [ECF No. 5] filed by Defendant Bentley Motor, Inc. ("Defendant" or "Bentley"), and the Motion to Confirm Arbitrator's Final Award and Incorporated Memorandum of Law ("Motion to Confirm") [ECF No. 11] filed by Plaintiff John Thielen ("Plaintiff" or "Thielen") [ECF No. 18].[1] Plaintiff opposed Bentley's Motion to Dismiss [ECF No. 10], and Bentley did not file a Reply. In turn, Bentley opposed Plaintiff's Motion to Confirm Final Award [ECF No. 12] and Thielen filed a Reply. [ECF No. 16]. The Court heard argument on February 27, 2026. [ECF No. 28]. Upon careful consideration of the Parties' filings, the record, and argument of counsel, the undersigned respectfully recommends that Plaintiff's Motion to Confirm be **GRANTED** and Bentley's Motion to Dismiss be **DENIED**, as set forth below.

---

[1] These Motions were referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge. [ECF No. 18].

## I. BACKGROUND

This action arises from a dispute between Plaintiff and Bentley regarding alleged defects to Plaintiff's 2024 Bentley Bentayga ("Vehicle"). [ECF No. 1].  Plaintiff purchased the Vehicle for $328,257.67. [*Id.* ¶ 11]. At the time of purchase, Bentley issued a warranty ("Warranty") for the Vehicle covering defects in materials and workmanship. [*Id.* ¶ 13]. Bentley's Warranty includes a dispute resolution provision requiring consumers to submit disputes to its "BBB AUTO LINE" arbitration process before pursuing a legal remedy under the Magnuson–Moss Warranty Act ("MMWA") or Florida's Motor Vehicle Warranty Enforcement Act ("Florida Lemon Law"). [*Id.* ¶ 14]. The Warranty description of BBB AUTO LINE's arbitration procedure states, in relevant parts:

> Arbitration is a process by which an impartial person makes a decision on your claim. The arbitrators are not connected with the automobile industry and serve on a voluntary basis. You may attend the hearing in person, bring witnesses, and give supporting evidence. Instead of appearing in person, you may request a written or even a telephone arbitration hearing. Bentley's independent dispute resolution program will obtain a final resolution of your claim. You then have the opportunity to accept or reject the decision.
>
> • If you accept the decision, the manufacturer will be bound by the decision and will be required to fulfill its obligation within the time frame specified by the arbitrator.
>
> • If you reject the decision, you are free to pursue other legal remedies available under state or Federal law, and the manufacturer will not be required to comply with any part of the decision.
>
> Please refer to the program materials for Bentley's independent dispute resolution program for the specific steps and time frames followed by the program.

[*Id.*; ECF No. 1-2 at 17-18].

Plaintiff alleges that, shortly after his purchase, the Vehicle experienced defects. [ECF No. 1 ¶ 15].  Plaintiff presented the Vehicle to Bentley's service center for multiple warranty repairs. [*Id.*].  After Bentley failed to repair the Vehicle, Plaintiff provided Bentley with a final opportunity

2

to cure the defects, which proved unsuccessful. [*Id.* ¶ 16].  Plaintiff then initiated a BBB AUTO LINE claim by submitting an "Agreement to Arbitrate" with Bentley and requesting that an arbitrator render a decision on Bentley's alleged failure to repair the Vehicle. [*Id.* ¶ 17-18; ECF No. 1-3]. The Agreement to Arbitrate provides that the decision will be in accordance with the BBB AUTO LINE Arbitration Rules ("Program Rules") and "Bentley's Program Summary ("Program Summary'). [*Id.* at 2].

The Program Rules provide that "[o]nce the consumer accepts a valid decision: The manufacturer will be bound to abide by the decision and comply with its terms (subject to any limited right of review that may be provided by state or federal law)." [ECF No. 1-6 at 12].  The decision acceptance form further provides that, by accepting the decision, Plaintiff waives any right to sue Bentley in court on any claim resolved at the arbitration hearing, unless Bentley fails to perform in accordance with the arbitrator's decision or unless otherwise provided by state or federal law. [*Id.*].

Plaintiff and Bentley, with counsel, participated in the BBB AUTO LINE dispute resolution procedure before arbitrator Ellen Tilles, Esq. [ECF No. 1 ¶ 17-18]. The proceeding was conducted entirely on written submissions. [*Id.* ¶ 19]. The arbitrator reviewed the materials submitted by both Parties, such as the Vehicle's purchase and repair history and the Parties' respective positions on Warranty coverage and Florida Lemon Law eligibility. *See* [ECF No. 1-4]. The arbitrator ultimately issued a written decision in Plaintiff's favor. [*Id.*; ECF No. 1 ¶ 20]. The arbitrator concluded that the Vehicle suffered from defects constituting a substantial impairment and awarded Plaintiff a remedy of $317,307.11, calculated pursuant to Florida Lemon Law. [*Id.*]. Plaintiff accepted the arbitrator's decision. [*Id.* ¶ 21].  Bentley requested clarification of the arbitrator's decision, asserting that the decision did not comport with Florida Lemon Law and thus

violated the Program Rules [ECF No. 5 ¶ 8]. The arbitrator responded that "the decision remains unchanged." [*Id.* ¶ 8-9]. Several weeks later, Bentley filed a notice of impossibility, advising Plaintiff that it would not comply. [*Id.* ¶ 10].

Plaintiff filed a Petition to Confirm Arbitration Award and Complaint for Damages ("Petition") in this district. [ECF No. 1].  Plaintiff asserts that more than ninety days have elapsed since the issuance of the BBB AUTO LINE decision without Bentley filing a motion to vacate the award, and therefore, the award must be confirmed. [*Id.* at 1]. Accordingly, in Count I, Plaintiff seeks confirmation of the BBB AUTO LINE award pursuant to § 9 of the Federal Arbitration Act ("FAA"). [*Id.* ¶ 25-29].  In Count II, Plaintiff also asserts a claim for breach of written warranty under the MMWA and a claim under Florida Lemon Law in Count III. [*Id.* ¶ 30-48].

Bentley moved to dismiss the Petition pursuant to Federal Rule of Procedure 12(b)(6), seeking dismissal of all counts. [ECF No. 5].  Bentley advances several arguments. [*Id.*].  First, as to Count I, Bentley argues that BBB AUTO LINE is not "arbitration" under the FAA but rather an "informal dispute settlement mechanism" governed by Federal Trade Commission ("FTC") regulations. [*Id.* at 3-5].  As to Count II, Bentley argues that Plaintiff fails to satisfy the MMWA amount in controversy requirement because recoverable damages for warranty defects are limited to diminution in value. [*Id.* at 5-6].  Finally, as to Count III, Bentley contends that Plaintiff's Florida Lemon Law claim is barred on two grounds: (1) Plaintiff failed to comply with Florida Lemon Law procedural requirements by not proceeding through the Florida New Motor Vehicle Arbitration Board after Bentley's noncompliance with the BBB AUTO LINE decision, and (2) the Vehicle was not "sold in this state" within the meaning of the Florida Lemon Law. [*Id.* at 6-7].

Plaintiff responded to Bentley's Motion to Dismiss. [ECF No. 10]. Plaintiff argues that dismissal of Count I is unwarranted because Bentley disregards the FAA's strong policy favoring

arbitration and the narrow scope of judicial review for the confirmation of arbitration awards. [*Id.* at 6-8]. Plaintiff further contends that Bentley's reliance on a Third Circuit decision in *Harrison v. Nissan Motor Corp. in U.S.A.*, 111 F.3d 343 (3rd Cir. 1997),  which held that BBB AUTO LINE is not arbitration under the FAA, is misplaced because this Circuit's controlling inquiry for determining whether a dispute resolution procedure is governed by the FAA is the framework articulated in *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.,* 524 F.3d 1235, (11th Cir. 2005) (hereafter "*Advanced Bodycare*"). [*Id.*].

As to Count II under the MMWA, Plaintiff disputes Bentley's jurisdictional challenge and maintains that the Court has subject matter jurisdiction because the subject $317,307.11 award satisfies diversity jurisdiction, as Plaintiff and Bentley are citizens of different states. [*Id.* at 10-11].  Plaintiff further argues that, even if the MMWA's amount in controversy requirement is not met, the Court may still exercise supplemental jurisdiction over the claim. [*Id.*]. Lastly, Plaintiff argues that Bentley's assertion that Plaintiff failed to satisfy pre-suit Florida Lemon Law requirements raises an affirmative defense that cannot be resolved on a motion to dismiss. [*Id.*]. Plaintiff further contends that Bentley had raised (and lost) some arguments in the BBB AUTO LINE proceeding that should be barred by the issue preclusion doctrine. [*Id.*].

While Bentley's Motion to Dismiss was pending, Plaintiff filed a motion to confirm the BBB AUTO LINE award. [ECF No. 11].  Plaintiff again maintains that, since more than ninety days have passed since the decision was issued and Bentley has not sought timely vacatur, the Court must confirm the BBB AUTO LINE award and enter judgment. [*Id.*]. Bentley opposes confirmation, largely reiterating the arguments raised in its Motion to Dismiss, attacking BBB AUTO LINE's applicability under the FAA as an informal dispute resolution mechanism. [ECF No. 11 at 3].  In his Reply, Plaintiff reinforces that BBB AUTO LINE meets this Circuit's

5

functional definition of FAA arbitration. [ECF No. 16 at 3]. Plaintiff also notes that Bentley's attempt to attack the merits of the BBB AUTO LINE award is time-barred and procedurally improper because Bentley did not move to vacate within the FAA's three-month limitations period. [*Id.* at 7].

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Bentley relies on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in support of its Motion to Dismiss. A defendant may assert a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) on either facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Service, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint." *Carmichael*, 572 F.3d at 1279. For a facial attack under Rule 12(b)(1), "the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true," and the complaint must be construed in a light most favorable to the plaintiff. *Id.* (citation omitted); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted). When analyzing a facial attack on subject matter jurisdiction, the court considers only the complaint and the attached documents. *See Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1214 n.4 (11th Cir. 2005) (citation omitted).

When a defendant raises a factual attack on subject matter jurisdiction, however, the defendant challenges "the trial court's jurisdiction—its very power to hear the case." *Lawrence*, 919 F.2d at 1529 (citations and marks omitted). Therefore, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its [jurisdiction]," and, as such, the court may consider evidence not attached to or contained in the complaint, such as deposition testimony and affidavits. *Id.* (citations and marks omitted); *Carmichael*, 572 F.3d at 1279 (citation omitted).

6

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.  Motion to Confirm Final Arbitration Award

The FAA "imposes a heavy presumption in favor of confirming arbitration awards; therefore, a court's confirmation of an arbitration award is usually routine or summary." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (internal quotation marks and citations omitted). Under § 9 of the FAA, the provision for judicial confirmation carries "no hint of flexibility" because "[o]n application for an order confirming the arbitration award, the court must grant the order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir. 2010). Once the initial requirements of 9 U.S.C. § 9 are met, venue and jurisdiction must also be examined.

### III. DISCUSSION

Bentley's Motion to Dismiss and Plaintiff's Motion to Confirm turn on the same threshold question: whether BBB AUTO LINE, as a dispute resolution procedure, memorialized in the

7

parties' "Agreement to Arbitrate," constitutes "arbitration" under the FAA. The Court will address this issue first, then apply the result to each motion.

### A. The BBB AUTO LINE Proceeding Constitutes Arbitration Within the Meaning of the FAA.

The FAA does not define arbitration, and "courts have had a difficult time defining just what types of procedures are enforceable under the statute." *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008). To determine whether a dispute resolution clause is an arbitration clause within the meaning of the FAA, courts in this Circuit apply a four-factor framework looking for the "common incidents" of "classic arbitration." *See, e.g., Grandis v. BGIS Glob. Integrated Sols. US LCC*, 643 F. Supp. 3d 1340, 1345 (S.D. Fla. 2022) (citing *Advanced Bodycare*, 524 F.3d at 1238); *Campbell's Foliage, Inc. v. Fed. Crop In. Corp.*, 562 F. App'x 828 (11th Cir. 2014) (unpublished). Specifically, a court should consider whether the purported arbitration clause provides for:

> (i) an independent adjudicator, (ii) who applies substantive legal standards (i.e. the parties' agreement and background contract law), (iii) considers evidence and argument (however formally or informally) from each party, and (iv) renders a decision that purports to resolve the rights and duties of the parties, typically by awarding damages or equitable relief.

*Advanced Bodycare*, 524 F.3d at 1239. "The presence or absence of any one of these circumstances will not always be determinative, and parties have great flexibility under the FAA to select pre-packaged dispute resolution procedures, or to craft their own." *Id.* "The question is how closely the procedure chosen resembles "classic arbitration" and whether enforcing it serves the intuited purposes of Congress." *Id.* Importantly, "[i]f a dispute resolution procedure does not produce some type of award that can be meaningfully confirmed, modified, or vacated by a court upon proper motion, it is not arbitration within the scope of the FAA." *Id.*

**1. BBB AUTO LINE Satisfies the "Common Incidents" of "Classic Arbitration" Framework Articulated in *Advanced Bodycare*.**

The Parties submitted an "Agreement to Arbitrate" to BBB AUTO LINE to render a decision on Bentley's alleged failure to repair the Vehicle. [*Id.* ¶ 17-18; ECF No. 1-3].  The Agreement to Arbitrate provides that an arbitrator will decide the dispute in accordance with BBB AUTO LINE's Program Rules and Bentley's Program Summary. [*Id.*]  The Court therefore begins by determining whether BBB AUTO LINE reflects the "common incidents" of "classic arbitration" framework articulated in *Advanced Bodycare*. *See* 524 F.3d at 1238.

### i.      Independent Adjudicator

Per the Program Summary, BBB AUTO LINE maintains a pool of "arbitrators" that are "interested in the fair and expeditious resolution of consumer disputes." [ECF No. 1-6 at 3–4]. The Program Summary further provides that arbitrators are selected in an impartial manner to ensure no conflict of interest with any party. [*Id.*]. Consistent with those provisions, the record reflects that the Parties' dispute was decided by an arbitrator, Ellen Tiles, Esq., appointed by BBB AUTO LINE. [ECF No. 1-4]. The Court thus finds the first "common incident" is satisfied.

### ii.     Application of Substantive Legal Standards

The Program Summary states that a claim seeking relief under a state's lemon law "must meet all standards set out by that state's lemon law." [ECF No. 1-6 at 3–4].  Consistent with that directive, the arbitrator's "Lemon Law Reasons for Decision Form" reflects that they evaluated the Warranty issues under Florida's Lemon Law framework. [ECF No. 1-4 at 3–4].  Further, the awarded relief was calculated under the "lemon law standard," noting that "all aspects of the lemon law have been complied with." [*Id.*].  The arbitrator's decision form also indicates that the arbitrator considered and resolved eligibility issues that Bentley raises again in this action. [*Id.*].

Accordingly, the Court also finds that BBB AUTO LINE involves, and the decision here reflects the application of substantive legal standards.

### iii. Consideration of Evidence and Argument

This "common incident" requires that the dispute resolution procedure at issue involve the consideration of evidence and argument, "however formally or *informally*." *See Grandis v. BGIS Glob. Integrated Sols. US LCC*, 643 F. Supp. 3d 1340, 1345 (S.D. Fla. 2022) (citing *Advanced Bodycare*, 524 F.3d at 1238) (emphasis added). BBB AUTO LINE offers in-person, phone, or written arbitration hearings. [ECF No. 1-6 at 6]. The consumer chooses the format, and the manufacturer's participation options depend on that choice. [*Id.*]. BBB AUTO LINE allows both parties to present witnesses and evidence, respond to the other side's submissions, question the other side's witnesses and evidence, and make closing statements. [*Id.*]. It also permits the arbitrator to request additional evidence and admit relevant written or recorded materials without strict courtroom evidentiary rules. [*Id.* at 6-8].

Here, the record reflects that BBB AUTO LINE proceeded solely through documents. [ECF No. 1-4 at 3]. Both Parties submitted written materials, with Bentley participating through counsel. [*Id.*]. The arbitrator reviewed and relied on the Parties' submissions, such as Plaintiff's repair orders and purchase orders, and Bentley's legal opinion and response to the arbitrator's request for additional information. [*Id.*]. Given the arbitrator's consideration of both Parties' written positions and supporting materials before issuing her decision, the Court finds that the third *Advanced Bodycare* incident is satisfied. *See Grandis*, 643 F. Supp. 3d at 1346 (holding "evidence and argument" incident satisfied where arbitrator considered parties' competing submissions and supporting materials, even though the process was informal and based solely on documents).

### iv.    A Decision that Purports to Resolve a Right or Duty of the Parties.

Under the Program Rules, manufacturers participating in BBB AUTO LINE "agree in advance with BBB National Programs to arbitrate certain disputes with consumers" and "the remedies that may be awarded." [ECF No. 1-6 at 6].  Bentley's Warranty likewise provides that the BBB AUTO LINE arbitration process "will obtain a *final resolution* of your claim." [ECF No. 1-2 at 17] (emphasis added).  Consistent with that commitment, the Program Rules provide that "*[a] final decision might award* reimbursement for past repairs, repurchase, replacement or nothing at all." [ECF No. 1-6 at 6]. That decision is then sent to the consumer, along with an "Acceptance/Rejection of Decision" form that sets the deadline for accepting or rejecting it. [*Id.* at 11].

If the consumer accepts the decision, the Program Rules provide that "the manufacturer will be bound to comply with the decision's terms . . . *subject to any limited right of review provided by state or federal law*." [ECF No. 1-6] (emphasis added).  The Program Rules further provide that, upon acceptance, the consumer gives up the right to sue the manufacturer in court on the claims resolved, unless the manufacturer fails to perform or unless otherwise provided by state or federal law. [*Id.*].  If the manufacturer fails to perform, the consumer "may have the *right to enforce the decision in court* or pursue other legal remedies under state or federal law. [*Id.*] (emphasis added). Conversely, if the consumer rejects the decision, the decision has no binding effect on the manufacturer.  In that circumstance, (1) the consumer may pursue any other legal remedies available under state or federal law; (2) the manufacturer is not obligated to perform the decision; and (3) depending on governing law, the decision may be admissible as evidence in a subsequent civil action. [*Id.*].

11

Viewed as a whole, the Court finds that BBB AUTO LINE's decision framework resolves the parties' rights and obligations: (1) if the consumer accepts the decision, it becomes binding on the manufacturer; and (2) if the consumer rejects it, the consumer remains free to pursue other remedies, and the manufacturer is under no obligation to perform. That conditional effect does not place the process outside the FAA.[2] *See Genesis Custom Jetliners, LLC v. ASG Aerospace, LLC*, No. 24-25060-CIV, 2025 WL 2145716, at *4 (S.D. Fla. July 2, 2025), *report and recommendation adopted*, No. 24-CV-25060-JB/EGT, 2025 WL 2142195 (S.D. Fla. July 29, 2025) (concluding that, despite "the inclusion of a non-binding aspect," the parties arbitration agreement is in accordance with the procedural remedies provided for by the FAA). The relevant inquiry is whether the Parties agreed to submit their dispute to a neutral third party for a decision. The Court finds that they did.  *See, e.g., Eichinger v. Kelsey-Hayes Co.*, No. 09-14092, 2010 WL 2720931, at *4 (E.D. Mich. July 8, 2010) (holding that a procedure under which the award became binding on the employer *only if accepted by the employee* was reviewable under the FAA because acceptance would "settle the controversy," and the employee's ability to reject the award did not render the procedure unenforceable).

**B. The Third Circuit's Reasoning in *Harrison* Does Not Govern Whether BBB AUTO LINE Constitutes Arbitration in This Circuit.**

Bentley contends that BBB AUTO LINE is not FAA arbitration because it is a nonbinding FTC "informal dispute settlement mechanism." [ECF No. 5 at 3-4; ECF No. 12 at 3].  In support of its position, Bentley relies primarily on *Harrison v. Nissan Motor Corp. in U.S.A.*, in which the Third Circuit held that BBB AUTO LINE is not "arbitration" governed by the FAA. 111 F.3d 343,

---

[2]   The Court recognizes that, in *Advanced Bodycare*, the Eleventh Circuit expressly left open whether non-binding arbitration, by itself, falls within the FAA.  *See Advanced Bodycare*, 524 F.3d 1235, 1237 (11th Cir. 2008).

345 (3d Cir. 1997).  In *Harrison*, Nissan moved to dismiss a plaintiff's action for warranty defects under the MMWA and Pennsylvania Lemon Law due to the plaintiff's failure to "first resort" to BBB AUTO LINE.  *Id.* at 345–47.   Following the denial of its motion, Nissan filed an interlocutory appeal under FAA § 16, characterizing the denial as a refusal to compel arbitration. *Id.* at 345–47.  The Third Circuit dismissed Nissan's appeal, holding that BBB AUTO LINE is not "arbitration" under the FAA because consumers are not required to complete the process. *Id.* Importantly, the Third Circuit expressly declined to decide whether the FAA applies to nonbinding arbitration in general. *Id.* at 350–51.

The *Harrison* court relied on the framework established by FTC Rule 703 and Pennsylvania's Lemon Law. *Id.* at 345–51. Under that framework, a consumer's requirement to "first resort" to BBB AUTO LINE is satisfied if no decision is issued within forty days, after which the consumer may proceed directly to court. *Id.* at 350–51. The Third Circuit reasoned that "the essence of arbitration" lies in the parties' agreement to submit their dispute to a third party for resolution through completion and the issuance of an award. *Id.* On that basis, the court observed that a consumer participating in BBB AUTO LINE is not required to pursue the procedure to completion in every case. *Id.* The court concluded that applying the FAA to compel continued participation in BBB AUTO LINE after the forty days would "frustrate" the consumer protection policies underlying the governing warranty statutes by forcing consumers to remain after their participation obligation is satisfied. *Id.*

Here, Plaintiff notes that *Advanced Bodycare* did not address whether a party's unilateral withdrawal before the arbitrator issues a decision bears on whether a dispute resolution procedure falls within the FAA's scope.  Plaintiff nevertheless argues that this feature does not conflict with the framework articulated in *Advanced Bodycare* and therefore does not prevent a court in this

13

Circuit from treating BBB AUTO LINE as FAA arbitration.  By contrast, Bentley contends that the *Harrison* court's reasoning bears on *Advanced Bodycare*'s fourth "common incident" of "classic arbitration"—whether the procedure "renders a decision that purports to resolve the rights and duties of the parties." *Advanced Bodycare*, 524 F.3d at 1239. Bentley further relies on two observations. First, Bentley highlights the Third Circuit's note that the issue of arbitration arose only as BBB AUTO LINE labels its process as "arbitration." [ECF No. 12 at 3].  Second, Bentley points to FTC Rule 703's directive that decisions issued from an informal dispute resolution mechanism like BBB AUTO LINE "shall not be legally binding on any person." [*Id.* at 4].

The Court agrees with Plaintiff that it need not adopt *Harrison*'s reasoning in applying *Advanced Bodycare*'s framework to the Parties' "Agreement to Arbitrate" through BBB AUTO LINE. Under *Advanced Bodycare*, the controlling question is whether the procedure bears the "common incidents" of "classic arbitration" and results in an award "meaningfully" susceptible to confirmation.  *Advanced Bodycare*, 524 F.3d at 1238. In *Advanced Bodycare*, the court held that a dispute resolution clause that could be satisfied by "nonbinding arbitration or mediation" was not enforceable under the FAA because mediation produces no final award resolving the dispute "in any way" and thus is not "an agreement to settle by arbitration a controversy." *Id* at 1238-40. The Court finds that *Harrison* does not control here, where the parties arbitrated through BBB AUTO LINE pursuant to their Warranty, resulting in a decision that Plaintiff accepted. Acceptance renders the decision binding on Bentley and requires performance.

## C.  BBB AUTO LINE Produces an Award That Can Be Meaningfully Confirmed by a Court Upon Proper Motion.

*Advanced Bodycare* also imposes a controlling limiting principle: "If the procedure 'does not produce some type of award that can be meaningfully confirmed, modified, or vacated,' it is not FAA arbitration." *Advanced Bodycare,* 524 F.3d at 1239. Pursuant to Section 9 of the FAA, a

14

court must confirm an award where the parties agreed that judgment may be entered upon it. This Circuit's unpublished decision in *Campbell's Foliage, Inc. v. Federal Crop Insurance Corp.,* while not controlling, is instructive to this Court in evaluating whether a binding arbitration decision that is subject to additional review may fall within FAA confirmation. 562 F. App'x 828 (11th Cir. 2014).   In *Campbell's Foliage,* the clause at issue provided that "[a]ny decision rendered in arbitration is binding on you and us unless judicial review is sought." *Id.* at 830.  After losing in arbitration, the plaintiff moved to vacate, arguing that the availability of "judicial review" rendered the proceeding "nonbinding" and, therefore, outside the "FAA's four statutory grounds for vacatur." *Id.*  The district court rejected the insured's argument, applied the FAA, and this Circuit affirmed. *Id.* at 831–32. The panel treated the provision as requiring binding arbitration subject to the limited judicial review associated with FAA awards. *Id.*  The Court reasoned that this type of provision is in line with *Advanced Bodycare*, resulting in an award that can be "meaningfully confirmed, modified, or vacated by a court upon proper motion." *Id.* at 832 (quoting *Advanced Bodycare*, 524 F.3d at 1240–41).

Here, the Warranty and the Program Rules provide that "[i]f you accept the decision, the manufacturer will be bound to abide by the decision and comply with its terms (subject to *any limited right of review* that may be provided by state or *federal law*)." [ECF No. 1-6 at 12] (emphasis added).  Further, if the manufacturer does not comply, "[a consumer] may have the right *to enforce the decision in court* or pursue other legal remedies under state or federal law." [*Id.*]. Here, the arbitrator ultimately issued a decision directing Bentley to pay Plaintiff $317,307.11 as a repurchase remedy, which Plaintiff accepted. Accordingly, the Court finds that once accepted, the BBB AUTO LINE decision became a binding award, subject to the limited review provided by confirmation, consistent with the FAA and this Circuit's approach in *Campbell's Foliage*.

**D. Florida Statutes § 681.109(1) and (4) and *Fischetti v. American Isuzu Motors* Do Not Preclude FAA Confirmation of Plaintiff's BBB AUTO LINE Award.**

Bentley also contends that, if Plaintiff was dissatisfied with Bentley's compliance with the BBB AUTO LINE decision, Plaintiff's exclusive remedy pursuant to Fla. Stat. § 681.109 was to request arbitration before the Florida New Motor Vehicle Arbitration Board prior to filing this action. [ECF No. 12 at 3]. Bentley further asserts that BBB AUTO LINE was required to issue a decision within forty days of Plaintiff's application, and because the decision was issued after that period, it is unenforceable under Fla. Stat. § 681.109(1). [*Id.* at 9].

Bentley relies on the Florida Fourth District Court of Appeals' decision in *Fischetti v. American Isuzu Motors* to support its position. 918 So.2d 974, 975 (Fla. 4th DCA 2005).  In *Fischetti*, BBB AUTO LINE rendered a decision in favor of the consumers. *Id.*  The consumers accepted the decision, but the manufacturer failed to comply. *Id.*  The consumers then sued Isuzu in Florida state court, seeking replacement or refund relief under the Florida Lemon Law, but the court entered summary judgment in Isuzu's favor. *Id.*  Florida's Fourth District Court of Appeal affirmed dismissal of the consumers' Lemon Law claim, holding that, if the consumers wanted such relief, they were required to timely request arbitration before the Florida New Motor Vehicle Arbitration Board after the BBB AUTO LINE decision pursuant to Fla. Stat. § 681.109. *Id.*  The court reasoned, "Although the consumers reasonably argue that requiring two separate arbitrations on the same claim is unnecessarily duplicative, that is precisely what the statute requires." *Id.*

The Court finds that *Fischetti* does not apply here. First, the Court notes that the language in Fla. Stat. § 681.109(1) does not expressly require a consumer to submit their dispute to the Florida NMVAB merely because BBB AUTO LINE failed to render a decision within forty days. Section 681.109(1) provides that, "[i]f a decision is not rendered by [BBB AUTO LINE] within 40 days after filing, the consumer *may* apply to the department to have the dispute removed to the

16

board for arbitration." Fla. Stat. § 681.109(1) (emphasis added). The statute's use of "may" is permissive. That permissive language is mirrored in Fla. Stat. § 681.109(2), stating that, where a consumer is dissatisfied with the BBB AUTO LINE decision or the manufacturer's compliance with it, the consumer "*may* apply to the Department to have the dispute submitted to the board for arbitration." Fla. Stat. § 681.109(2) (emphasis added). The Court does recognize, however, that Fla. Stat. § 681.1095(4) provides that, before filing a "civil action on a matter subject to [a vehicle's nonconformity with the subject warranty]," the consumer must first submit the dispute to Florida's Department of Legal Affairs, and then possibly to the Florida NMVAB for arbitration if eligible. Fla. Stat. § 681.1095(4). Nonetheless, the Court concludes that these statutes do not bar the application of the FAA to Plaintiff's accepted BBB AUTO LINE decision.

Even if Fla. Stat. §§ 681.109(2) and 681.1095(4) were construed to require Plaintiff to proceed to a separate state-created forum before seeking confirmation under the FAA. The FAA supersedes state laws that lodge exclusive jurisdiction in another administrative forum and "foreclose[s] State legislative attempts to undercut the enforceability of arbitration agreements." *See Preston v. Ferrer*, 552 U.S. 346, 349, 358 (2008). The FAA's displacement of conflicting state law is "now well-established." *Id.* at 352. The "mere involvement of an administrative agency in the enforcement of a statute" does not limit private parties' obligation to comply with their arbitration agreements. *Id.* at 358 (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28-29 (1991). Finally, Fla. Stat. § 681.101 acknowledges the possibility of such preemption, stating "nothing in this chapter shall in any way limit or expand the rights or remedies which are otherwise available to a consumer under any other law." § 681.101, Fla. Stat.

The Court need not rely on that ground alone. Count I seeks FAA confirmation of an award binding on Bentley following Plaintiff's acceptance. Florida law treats confirmation of arbitration

17

awards as a distinct statutory proceeding, not as a "civil action" of the underlying claim, as contemplated in Fla. Stat. § 681.1095(4). *See Miele v. Prudential-Bache Securities, Inc.*, 656 So. 2d 470 (Fla. 1995) (rejecting argument that a petition to confirm transformed the matter into the kind of "civil action" governed by another statute and explaining that confirmation proceedings are governed by the arbitration code). Accordingly, the Court finds that Plaintiff's Petition and Motion to Confirm its BBB AUTO LINE decision under the FAA is not the sort of Lemon Law merits action to which *Fischetti* rejected. Plaintiff may seek confirmation of its award under § 9 of the FAA.

**E. Plaintiff's Accepted BBB AUTO LINE Award Satisfies § 9 of the FAA, and thus Plaintiff's Motion to Confirm Arbitrator's Final Award Should Be Granted.**

Having determined that BBB AUTO LINE falls within the FAA, the Court next considers whether the award is confirmable under § 9 of the FAA. Pursuant to Section 9, a court must confirm an award where the parties agreed that judgment may be entered upon it, the application is made within one year after the award is made, and the award has not been vacated, modified, or corrected under sections 10 or 11. Further, the FAA does not itself confer federal jurisdiction, and a petition to confirm under section 9 must rest on an independent jurisdictional basis apparent on its face. *See Badgerow v. Walters*, 142 S. Ct. 1310, 1314, 1316–17 (2022); *Webusenet, Inc. v. Ringdahl*, No. 05-80063-CIV-HURLEY/HOPKINS, 2006 WL 8445640, at *2 (S.D. Fla. June 6, 2006), *report and recommendation adopted in part,* No. 05-80063-CIV-HURLEY/HOPKINS, 2006 WL 8445639 (S.D. Fla. Aug. 24, 2006).

The Court first addresses whether the jurisdictional and venue requirements are met. *Loral Corp. v. Swiftships, Inc.,* 77 F.3d 420, 422 (11th Cir. 1996), *cert. denied,* 519 U.S. 966 (1996) ("Subject matter jurisdiction for cases filed pursuant to § 9 of the [Federal Arbitration] Act must be based upon either diversity of citizenship or the existence of a federal question."). Here, the

Court has subject matter jurisdiction based on diversity of citizenship—Plaintiff is domiciled in Key West, Florida, and Bentley is a Delaware corporation with its principal place of business in Reston, Virginia—and the amount in controversy, the $377,539.57 award, exceeds the $75,000 threshold. *See* 28 U.S.C. § 1332; [ECF No. 1 ¶ 5].

Further, in a proceeding to confirm an arbitration award, the FAA's venue provisions are permissive rather than exclusive. *See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 197–98, 204 (2000).  A petition to confirm, therefore, may be filed either in the district where the award was made or in any district where venue is otherwise proper under 28 U.S.C. § 1391. *Id.* Plaintiff invokes the latter ground, alleging that a substantial part of the events or omissions that give rise to the Petition occurred in this District. [ECF No. 1 ¶ 9].  Plaintiff's allegation is not free from doubt, however, because the Petition's only apparent connection to Key West is Plaintiff's residing there. [*Id.* ¶ 2]. However, the Court need not resolve that question. Bentley did not challenge venue. Although it moved to dismiss, it did not assert improper venue under Rule 12(b)(3), and the defense is therefore waived. *See* Fed. R. Civ. P. 12(b)(3), 12(h)(1); *Manley v. Engram*, 755 F.2d 1463, 1468 (11th Cir. 1985) (holding waiver cures any defect in venue). Nor may the Court revive the issue *sua sponte*. *See Aero Techs., LLC v. Lockton Cos. Int'l Ltd.*, 406 F. App'x 440, 441–42 (11th Cir. 2010). Once a defendant waives venue, a district court may not dismiss on that basis under 28 U.S.C. § 1406(a). *Id.* Accordingly, any defect in venue has been cured, and this action may proceed in this Court.

Turning to whether § 9 of the FAA is satisfied, Plaintiff's Petition is timely. *See* 9 U.S.C. § 9 (permitting a party to seek confirmation "at any time within one year after the award is made"). Section 9 further provides that the Court "must grant" confirmation unless the award is vacated, modified, or corrected as prescribed in §§ 10 and 11. *Id.*  Here, the arbitrator issued the award on

19

January 7, 2025, and Plaintiff filed the Petition on May 28, 2025, within the one-year period. [ECF No. 1 ¶ 20].

Bentley, however, did not timely invoke §§ 10 or 11. Under the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served . . . within three months after the award is filed or delivered." 9 U.S.C. § 12.  Nothing in the record shows that Bentley served such a motion to vacate within that period. Further, Bentley identifies no authority that would render as timely its Motion to Dismiss or its opposition to Plaintiff's Motion to Confirm Final Award.  Accordingly, to the extent those filings sought vacatur, modification, or correction of the award, or otherwise asserted grounds under §§ 10 or 11 as a defense to confirmation, they are untimely and cannot defeat confirmation. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008); *McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1240–41 (11th Cir. 2021).

Finally, even if the Court were to reach Bentley's arguments raised in its Motion to Dismiss or in opposition to confirmation, those arguments would fail. [ECF Nos. 5, 12].  Bentley's contention that the arbitrator misapplied Florida law and that the award was impossible to perform amounts to nothing more than a merits challenge to the arbitrator's resolution of the dispute. "[A] traditional merits appeal is not available" from an adverse arbitral award. *Gherardi v. Citigroup Glob. Mkts. Inc.*, 975 F.3d 1232, 1238 (11th Cir. 2020). The Court's "sole question" is whether the arbitrator was "even arguably" interpreting the parties' agreement, not whether she "got its meaning right or wrong." *Id.*  Even a "serious error" does not authorize vacatur. *See id.*; *see also Hidroelectrica Santa Rita S.A. v. Corporacion AIC, S.A.*, 119 F.4th 920, 925 (11th Cir. 2024) ("Arbitrators do not exceed their powers when they make errors, even a 'serious error.'").  Because Bentley's arguments do not establish any basis for vacatur, modification, or correction under §§

10 or 11, they cannot defeat confirmation. Plaintiff's Motion to Confirm the Final Award should therefore be granted.

### F.   Bentley's Motion to Dismiss Should be Denied.

For the reasons set forth above, the Court has concluded that the BBB AUTO LINE proceeding qualifies as an arbitration under the FAA. In the absence of any valid ground under the FAA to vacate, modify, or refuse confirmation of the Final Award, the Court has also recommended that Plaintiff's Motion to Confirm the Final Award be granted. *See* 9 U.S.C. §§ 9– 11. Accordingly, Bentley's Motion to Dismiss Count I of the Petition, which seeks confirmation of the accepted BBB AUTO LINE award under 9 U.S.C. § 9, should be denied insofar as it rests on the argument that BBB AUTO LINE is not FAA arbitration. The Court next addresses Plaintiff's remaining claims under the Magnuson-Moss Warranty Act and the Florida Lemon Law.

### 1.   Count II and III Survive Dismissal at this Stage.

#### i.   Count II under MMWA

Bentley argues that Count II under the MMWA should be dismissed because the Petition fails to adequately allege the jurisdictional amount in controversy of more than $50,000 required to assert an MMWA claim in federal court. [ECF No. 5 at 5].  When a defendant raises a facial attack on the court's subject matter jurisdiction, the court is required to "merely to look and to see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true" *McMaster v. United States,* 177 F.3d 936, 940 (11th Cir. 1999). A reviewing court should not dismiss an action for failure to satisfy the amount in controversy requirement unless it appears to a legal certainty that a plaintiff's claim is for less than the jurisdictional amount. *State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr., Inc.*, 20 F. Supp. 3d 1363, 1367 (S.D. Fla. 2014) (citation omitted).

Because the MMWA is "virtually silent" as to measuring damages, courts must look to state law. *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298–99 (11th Cir. 1999) (citation and internal quotation marks omitted).  Under Florida law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted unless special circumstances show proximate damages of a different amount" Fla. Stat. § 672.714(2).  Therefore, the proper measure of damages is the purchase price of a non-defective car less the value of the defective car at the time of purchase. *See Chmura v. Monaco Coach Corp.*, No. 8:04CV2054-T-24MAP, 2006 WL 709325, at *4 (M.D. Fla. Mar. 20, 2006).

Here, Plaintiff alleges in support of its MMWA claim that as a direct and proximate result of Bentley's failure to comply with the Warranty, Thielen has suffered damages. [ECF No. 1 ¶ 9]. Further, the Petition describes defects that resulted in a substantial impairment of the Vehicle, which was purchased for $328,000. [*Id.* ¶ 45]. Although Plaintiff did not expressly allege its diminution in value damages, such omission is not fatal at this stage. Taking Plaintiff's allegations as true and applying the legal certainty standard, the Court cannot conclude that Plaintiff's recoverable damages fall below the $50,000 threshold required under the MMWA. Count II, therefore, should not be dismissed for lack of subject matter jurisdiction.

Even if Plaintiff ultimately failed to satisfy the MMWA's $50,000 threshold, dismissal is not automatically required because the Court has diversity jurisdiction over Count I. "Where a federal court has original jurisdiction over some claims in an action, it may exercise 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Ortiz v. Pin Ups of Daytona Beach, LLC*, No. 6:19-CV-1644-ORL-37-LRH,

22

2020 WL 10456855, at *1 (M.D. Fla. Mar. 18, 2020) (quoting 28 U.S.C. § 1367). "Magnuson Moss 'claims that cannot independently be heard in federal court owing to the absence of the requisite amount in controversy, can still be heard in federal court in circumstances where supplemental jurisdiction is properly exercised under 28 U.S.C. § 1367.'" *Matthews v. James Hardie Bldg. Prod., Inc.*, No. 3:16-CV-378-MCR-EMT, 2017 WL 6994567, at *3 (N.D. Fla. Nov. 21, 2017).

Because diversity jurisdiction is established, the Court need not rely on federal question jurisdiction to hear Plaintiffs' MMWA claim. Even assuming Plaintiffs cannot satisfy the MMWA's $50,000 amount in controversy requirement, Count II still falls within the Court's supplemental jurisdiction because it forms part of the same case or controversy as Plaintiffs' other claims in Count I and Count III. *See* 28 U.S.C. § 1367(a).  Each claim arises from the same alleged defects in the Vehicle and the same Warranty. [ECF No. 1].  Accordingly, supplemental jurisdiction is proper. *See, e.g., Angarita v. Hypertoyz, Inc.,* No. 23-CV-20695, 2023 WL 8593312, at *6 (S.D. Fla. Dec. 6, 2023), *report and recommendation adopted*, No. 23-20695-CIV, 2024 WL 380878 (S.D. Fla. Jan. 31, 2024) (exercising supplemental jurisdiction over MMWA claim that did not independently satisfy § 2310(d)(3)(B)'s amount in controversy requirement).

### ii.   Count III under Florida Lemon Law

With respect to Count III, Bentley's Motion to Dismiss should be denied because each of the issues it raises turns on matters that cannot properly be resolved on a motion to dismiss. [ECF No. 5 at 6-8]. Bentley first argues that Plaintiff failed to satisfy §681.1095(4) requirements that "*before* filing a civil action on a matter subject to s. 681.104, the consumer *must* first submit the dispute to the department, and to the board if the dispute is deemed eligible . . ." *See* [*Id.*]; Fla. Stat. § 681.1095(4). "Whether or not [a party] fulfilled any necessary conditions precedent to filing

suit is a question not suitable for disposition upon a motion to dismiss." *Tikiz Franchising, LLC v. Piddington*, No. 17-CV-60552, 2017 WL 8780760, at *2 (S.D. Fla. May 8, 2017) ("[Defendant's] contrary assertion that Plaintiffs did not satisfy conditions precedent . . . raises an issue of fact inappropriate for resolution on a motion to dismiss.")). To withstand dismissal, alleging that conditions precedent have been satisfied is "sufficient" for pleading purposes. *See Tikiz Franchising, LLC*, 2017 WL 8780760, at *2 (citing Fed. R. Civ. P. 9(c)).

Here, Plaintiff expressly alleges that "[a]ll conditions precedent or other requirements for bringing this action occurred, were performed or were waived." [ECF No. 1 ¶ 10].  At the pleading stage, that allegation is sufficient, and dismissal of Count III on that basis is unwarranted. *See, e.g.*, *Sardinas v. Miami Veterinary Specialists, P.A.,* No. 1:20-CV-22987, 2020 WL 7241364, at *5 (S.D. Fla. Dec. 8, 2020); *Vargas v. Fla. Crystals Corp.*, No. 16-81399-CIV, 2017 WL 11536186, at *5 (S.D. Fla. May 30, 2017) (explaining that there is "no basis to find, at the pleading stage" that claims were premature where complaint alleged that all conditions precedent have been fulfilled); *Krauser v. Biohorizons, Inc.*, No. 10-80454-CIV, 2010 WL 3468481, at *3 (S.D. Fla. Sept. 1, 2010) (concluding that allegation that "all conditions precedent to the institution of this action have occurred, been met or otherwise waived" was sufficient to plead compliance with a condition precedent under the contract).

For the same reasons, Bentley's argument that the Bentayga is not a "motor vehicle" within the meaning of Section 681.102(14) is likewise not appropriately decided at this stage. [ECF No. 1 ¶ 10].  In its Motion to Dismiss, Bentley acknowledges that "the determination of where a contract was executed is fact-intensive." [*Id.*].  However, fact-intensive inquiries should not be determined at the pleadings stage. *See, e.g.*, *Integrar, LLC v. Base Int'l S.A.*, No. 23-cv-24233, 2024 WL 3460041 at *3 ("[F]act-intensive inquiries are more appropriately addressed at the

24

summary judgment stage, not on a motion to dismiss"), *report & recommendation adopted*, 2024 WL 3460041 (S.D. Fla. July 18, 2024); *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011), No. 5:10-cv-329-Oc-10GRJ, (M.D. Fla. Mar. 1, 2011) (denying dismissal on Rule 12(b)(6) because, "based on the sparseness of the present record," the court could not "determine at this time precisely where the contract was executed"). Accordingly, the Court finds that Count III survives dismissal.

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's Motion to Confirm Arbitrator's Final Award be **GRANTED** and Bentley's Motion to Dismiss be **DENIED** as to all Counts.

## V. OBJECTIONS

Within **seven (5) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1). Any response shall be filed within **seven (5) days** of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**RESPECTFULLY SUBMITTED** in Chambers in Fort Lauderdale, Florida, on this 23rd day of March, 2026.

_____
**DETRA SHAW-WILDER**
**UNITED STATES MAGISTRATE JUDGE**

cc: Counsel of Record

25